IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LEEQUANE A. MCGOWAN,

                Plaintiff,

v.

NURSE PRACTITIONER SANDRA MCARDLE,

                Defendant.

OPINION and ORDER

19-cv-978-jdp

---

Pro se plaintiff LeeQuane McGowan is proceeding on a claim that defendant Sandra McArdle, a nurse practitioner, failed to provide him adequate medical care for his sickle cell disease while he was incarcerated at Wisconsin Secure Program Facility (WSPF). Before the court is McArdle's motion for summary judgment. Dkt. 45. In considering McArdle's motion, I have viewed the evidence in the light most favorable to McGowan. But even with this perspective, McGowan has failed to submit evidence showing that McArdle acted indifferently or negligently to his medical needs. McArdle's motion will be granted, and this case will be closed.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

**A. The parties and background**

Plaintiff LeeQuane McGowan was incarcerated at WSPF between May 2019 and March 2020. Defendant Sandra McArdle is a nurse practitioner that worked as a primary care provider at WSPF during the relevant time period.

McGowan has sickle cell disease, which is a blood condition that causes red blood cells to become misshapen and break down. McGowan has constant and chronic pain from his sickle cell disease. He also suffers from four or five sickle cell crises per year. During a sickle cell crisis, sickle-shaped red blood cells clump together and block blood vessels that carry blood to certain organs, muscles, and bones. McGowan experiences severe pain during sickle cell crises.

Common treatment for sickle cell disease includes daily hydroxyurea and folic acid. Hydroxyurea makes red blood cells less likely to turn into a sickle shape, while folic acid helps prevent anemia. Adequate hydration can also help avoid sickle cell crises and sickle cell pain. Pain medications, including opiates, may be given to treat the pain resulting from a sickle cell crisis. But opioids do not treat the underlying blood condition, so they do not decrease the chance that a patient will have a sickle cell crisis.

McArdle prescribed opioids sparingly in the prison setting because they can cause psychological tolerance and dependence, respiratory depression, and hyperalgesia (increased sensitivity to pain). Opioids can also be misused in` the prison setting. It was defendant McArdle's opinion that patients with sickle cell disease should not be prescribed narcotic pain medications to treat chronic pain, and that narcotics should be used only to treat pain resulting from a sickle cell crisis. McArdle preferred to use liquid morphine to treat patients experiencing breakthrough pain during a sickle cell crisis.

B.  Treatment for McGowan's sickle cell disease

McGowan was transferred from Green Bay Correctional Institution to WSPF on May 15, 2019. At Green Bay, McGowan received Tylenol 3 (acetaminophen with codeine), Vicodin (acetaminophen and hydrocodone), and morphine to treat his sickle cell pain. He also had prescriptions for hydroxyurea, folic acid, acetaminophen, trazadone, and ibuprofen.

McGowan's non-opioid prescriptions followed him to WSPF. Defendant McArdle, who saw McGowan two days after his transfer, told McGowan that his preventative medications were the most important part of his treatment plan. She also told him that she would permit narcotic medication for his sickle cell pain on an as-needed basis, but only if he signed a Narcotic Chronic Pain Management Agreement. The agreement described the risks of using narcotic medication and the expectations that DOC had for patients receiving narcotic medication. For example, the agreement stated that inmates receiving narcotic medication must comply fully with their care plan and take all medication as prescribed. If the inmate violated the terms of the agreement, the patient would no longer be eligible to receive narcotic pain medication. McArdle told McGowan that unless he signed the agreement and promised to use the narcotic medication as intended, she would not prescribe narcotic medication to him.

McArdle wanted McGowan to sign the agreement for a couple of reasons. First, McArdle wanted to make it clear that she would not approve narcotics as a treatment for chronic pain. Second, McArdle was concerned that McGowan might misuse narcotics. McArdle had reviewed McGowan's medical records, which, in her opinion, showed that McGowan might have misused narcotics in the past. His records showed that he been admitted to a hospital in Green Bay for sickle cell pain in 2015, but that the hospital physician noted that McGowan's pain was well-controlled. The physician also noted that he suspected that McGowan's emergency room visit was prompted by McGowan's hope to obtain morphine. Dkt. 49-1, at 131. At another hospital visit in 2018, the nurse practitioner who treated McGowan did not think that McGowan was having a sickle cell crisis and did not think he needed additional pain medication. Dkt. 48-1, at 6. Also in 2018, McGowan had been accused of misusing his

medication by hoarding mirtazapine (an antidepressant) and Tylenol 3 (a narcotic medication) in his cell. *Id.* at 127.

McGowan refused to sign the Narcotic Chronic Pain Management Agreement. (McGowan says that he refused to sign the agreement because McArdle told him that he would be charged for morphine that he received at the hospital. McGowan does not explain why being told that he would be charged for morphine deterred him from signing the agreement.) McArdle told McGowan that he would still be treated even though he did not have a narcotic prescription on file. She told him that if he experienced breakthrough pain, he should notify security staff, who would alert health services. McGowan would then be evaluated and sent to the emergency room for further treatment if necessary. (McGowan states that he was not always evaluated or treated when he complained to security staff about pain crises.)

McGowan submitted several health service requests in June, complaining about pain from his sickle cell disease and stating that his current pain medications were not working. He was given a TENs unit and muscle rub for his pain, as well as Tylenol. McArdle reminded McGowan of the importance of taking his preventative medications. But on several instances during May, June, July, and August 2019, McGowan refused to take his hydroxyurea, folic acid, and non-narcotic pain relievers. Dkt. 49-1.

On August 5, 2019, McGowan notified security staff that he was experiencing excruciating pain from his sickle cell disease. He also submitted a health service request complaining about severe pain and stating that Tylenol plus hydrocodone had worked in the past. He asked staff to notify McArdle, but there is no evidence that McArdle was notified. McGowan was not seen by health services staff until the next day, when he was sent to the emergency room for treatment. At the hospital, McGowan was given three liters of fluid,

4

dilaudid (hydromorphone), and a prescription for tramadol, 50 mg every six hours as needed for up to three days. Dkt, 57-3. When McGowan returned to the prison, he was given only two doses of tramadol before the prescription was cancelled.

McGowan saw McArdle for a follow-up appointment on August 6. McGowan told McArdle that he needed to have a strong pain medication available to him for when he suffered pain from his sickle cell disease. McArdle told McGowan that she would not prescribe liquid morphine to him unless he signed the Narcotic Chronic Pain Management Agreement. McGowan stated that having liquid morphine available for sickle cell crises was not sufficient. McArdle then told McGowan that she would consider prescribing duloxetine (nerve pain medication) for his pain, but that she would need to talk to his psychiatrist first because duloxetine promotes higher serotonin levels. McArdle later notified McGowan that she could not prescribe duloxetine because McGowan was already taking a medication that promoted higher serotonin levels.

On August 7 and 8, 2019, McGowan refused to take the folic acid prescribed to him. McArdle discontinued the folic acid prescription at McGowan's request. On August 16, McGowan signed the chronic pain management agreement. McArdle then wrote a prescription authorizing McGowan to be given liquid morphine at the prison to treat pain from a sickle cell crisis. *Id.* at 3.

In October 2016, McArdle referred McGowan to an outside hematologist. The hematologist recommended that McGowan's trazadone be discontinued, that his dosage of hydroxyurea be reduced, that he be referred to physical therapy, and that his eyes be evaluated by an optometrist. McArdle implemented all of the hematologist's recommendations.

McArdle stopped treating McGowan in November 2019. In December 2019, McGowan was treated by Dr. Ribault at WSPF. Ribault noted that McGowan was requesting narcotics to treat his sickle cell pain, despite McGowan admittedly not taking his NSAIDs and Tylenol on a consistent basis. Dkt. 50-9. Ribault noted that, "likely there is a psychological and physiological addiction to narcotics that may have occurred," and that McGowan did not acknowledge the downsides of narcotics. *Id.* Ribault also noted that McGowan's hematologist had recommended "supportive management," including physical therapy, NSAIDs, and Tylenol to control pain. *Id.*

In January 2020, McGowan was treated by Dr. Hoffman at WSPF. Hoffman noted that McGowan was requesting narcotics to treat his sickle cell pain, despite Hoffman explaining the "recent evidence that clearly establishes that chronic narcotics cause more problems than they solve, with the upregulating of pain receptors." Dkt. 50-8. Hoffman noted that McGowan was unwilling to try any other treatment and had "no interest" in hearing about the downsides of narcotics. Hoffman also noted that McGowan he threatened to sue Hoffman if he did not give him narcotics. *Id.* Hoffman declined to prescribe narcotics and prescribed diclofenac topical gel instead. *Id.*

ANALYSIS

McGowan was granted leave to proceed on claims that McArdle violated his rights under the Eighth Amendment and Wisconsin medical malpractice law by failing to provide him adequate treatment for the pain caused by his sickle cell disease. McArdle has moved for summary judgment on McGowan's Eighth Amendment and medical malpractice claims,

arguing that McGowan cannot prove that she acted with deliberate indifference or negligence in treating his sickle cell disease.

**A. Eighth Amendment**

The Eighth Amendment's prohibition on cruel and unusual punishment prohibits prison officials from acting with "deliberate indifference" to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). A prisoner may prevail on a claim under the Eighth Amendment by showing that (1) he has an objectively serious medical condition; and (2) defendants acted with deliberate indifference to that condition. *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first element, an objectively serious medical condition, is one that a doctor recognizes as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Pyles*, 771 F.3d at 412. Defendant McArdle accepts that McGowan's sickle cell disease is a serious medical condition. Dkt. 46, at 3.

The second element, an official's deliberate indifference, relates to the official's subjective state of mind. *Perez v. Fenoglio*, 792 F.3d 768, 776–77 (7th Cir. 2015); *Arnett*, 658 F.3d at 750. To show that a defendant acted with deliberate indifference, a plaintiff must show that the defendant knew of and disregarded a substantial risk of harm. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016); *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). A medical provider violates the Eighth Amendment if the provider administers "blatantly inappropriate" medical treatment, prescribes a course of treatment without exercising medical judgment, or prescribes treatment that the provider knows will be ineffective. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662–63 (7th Cir. 2016); *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). But it is not enough for a plaintiff to show that he disagrees with a

defendant's conclusions about the appropriate treatment, *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006), that other medical providers reached a different conclusion about what treatment to provide the plaintiff, *Pyles*, 771 F.3d at 409, or even that a defendant could have provided better treatment. *Lee v. Young*, 533 F.3d 505, 511-12 (7th Cir. 2008). Rather, plaintiff must show that any medical judgment by defendant was "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyles*, 771 F.3d at 409. *See also Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996).

McGowan contends that McArdle acted with deliberate indifference to his severe pain by refusing to prescribe effective pain medication to him. But the evidence does not support McGowan's claim. McArdle ensured that McGowan had access to medications that could prevent sickle cell pain and crises, including hydroxyurea and folic acid. She advised him to take his medications consistently, along with over-the-counter pain medication, to treat his condition proactively. McArdle also explained to McGowan that he could obtain stronger pain medication during sickle cell crises. She told him that she would prescribe liquid morphine if he agreed to comply fully with his treatment plan, and she told him that he could obtain emergency care from the hospital. McArdle has provided a sworn statement saying that the treatment she provided to McGowan was appropriate under the circumstances. Dkt. 49, ¶¶ 22, 55. McArdle's opinion is bolstered by the evidence showing that McGowan's other treating providers, including Dr. Ribault, Dr. Hoffman, and an outside hematologist, declined to recommend narcotic medication and recommended treatment plans substantially similar to McArdle's treatment plan.

McGowan contends that McArdle should have tried harder to find a medication that would relieve his pain. But this argument fails. McGowan refused to sign the Narcotic Chronic Pain Management Agreement, which would have allowed him to be treated with the narcotic medication at the prison. In addition, McGowan did not comply with McArdle's treatment plan. He did not take his over-the-counter pain medication on a consistent basis, and on several occasions, he refused his other medications that were intended to prevent sickle cell crises and proactively treat his condition. McArdle was not obligated to search for additional treatment options when McGowan did not comply with the first treatment plan that she prescribed.

McGowan also complains that security and health services staff did not always respond promptly to his complaints of severe pain. He points specifically to the incident on August 5, 2019, when he complained of severe pain but was not seen until the following day. But McGowan has submitted no evidence showing that McArdle was responsible for any delays that McGowan experienced in receiving treatment. As for the August 5 incident, there is no evidence that McArdle was aware of McGowan's complaints until after he returned from the hospital.

Finally, it is well established that medical staff are entitled to deference when choosing an appropriate pain reliever. *See Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019); *Burton*, 805 F.3d at 785–86 (doctor's refusal to prescribe narcotic did not violate detainee's constitutional rights, even though another doctor had prescribed it); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations."); *Norwood v. Gosh*, 723 F. App'x 357, 365 (7th Cir. 2018) ("treating pain allows considerable room for professional judgment"). And narcotics impose heightened risks of abuse

9

and addiction, so it is appropriate for medical staff to be hesitant before prescribing them. *Lockett*, 937 F.3d at 1024. Thus, although McGowan wanted stronger pain medication, his disagreement with McArdle' medical judgment is not sufficient to sustain an Eighth Amendment claim. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards").

McGowan has not submitted evidence showing that McArdle's treatment decisions were "blatantly inappropriate" or "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet*, 439 F.3d at 396. Therefore, McArdle is entitled to summary judgment on McGowan's Eighth Amendment claim against her.

## B. Negligence

To prevail on his negligence claim against McArdle, McGowan must prove that McArdle breached her duty of care and that McGowan suffered an injury as a result. *See Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 520, 625 N.W.2d 860, 865. Wisconsin law defines medical negligence as the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sawyer v. Midelfort*, 227 Wis. 2d 124, 149, 595 N.W.2d 423, 435 (1999). This means that McGowan has to show that McArdle failed to use the required degree of skill exercised by an average nurse practitioner under the circumstances, that McGowan suffered harm, and that there is a causal connection between McArdle's failure to

conform to the standard of care and McGowan's harm. *See Carney-Hayes v. Nw. Wisconsin Home Care, Inc.*, 2005 WI 118, ¶ 37, 284 Wis. 2d 56, 81–82, 699 N.W.2d 524, 537.

McGowan has not shown that McArdle failed to use medical judgment or failed to use the appropriate standard of care in treating him. As discussed above, McArdle ensured that McGowan had the medications he needed to mitigate sickle cell pain. She arranged for McGowan would have access to emergency medical treatment when needed. And she referred McGowan to an outside hematologist for evaluation. Numerous medical care providers counseled against McGowan using narcotics to teat chronic pain. No reasonable jury could conclude that McArdle failed to use medical judgment or made a treatment decision that fell below the standard of care for a prison nurse practitioner under the circumstances.

ORDER

IT IS ORDERED that defendant Sandra McArdle's motion for summary judgment, Dkt. 45, is GRANTED. The clerk of court is directed to enter judgment for McArdle and close this case.

Entered May 25, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge